# CHESHIRE,

## DECEMBER TERM, A. D. 1860.

---

### BOYCE v. CHESHIRE RAILROAD.

Upon the question whether fire was communicated to a building by sparks or coals from particular locomotive engines, running upon a railroad upon a specified occasion, evidence that sparks and even coals were emitted from other engines running upon the same road upon other occasions, is, incompetent, unless it be conceded that those other engines were of the same construction, used in the same manner and in the same state of repair.

Evidence is not immaterial, when it is calculated to prejudice the jury against the party objecting to its reception and against whom it is offered, although it relate to matters in themselves immaterial and irrelevant to the question in controversy.

An immaterial averment in an indictment, declaration or other pleading, can not be rejected as surplusage, unless every allegation or averment which it goes to identify by description, or to limit or define, may also be rejected ; so that, if any material averment is thus described, limited or defined by it, the whole pleading must fall, without proof of the immaterial averment.

CASE. A copy of the declaration makes part of the case.

The defendants offered evidence tending to show that, from the construction, management and state of repair of the engines, from which it was claimed the fire was communicated to the plaintiff's barn, it was improbable that it originated in that way.

G. W. Perry was a witness called by the defendants to this point, and testified that he was master mechanic upon the road, and after stating that he made an examination

of the two engines that ran over the road upon the night of the fire, and describing them and the bonnets of wire gauze over the smoke stack upon each, was inquired of, on cross-examination, as to the state and condition of all the engines that were run upon the road by the company, at and about the time of the fire, and stated that the engines and the bonnets to the smoke-pipes were frequently examined, so that they might be repaired if found in any way out of order, and that there were no engines run upon this road, at or about the time of the fire, without bonnets, or with the bonnets out of order.

The plaintiff then introduced evidence to show that at times prior and subsequent to, and about the time of the fire, some of the engines run over this road had thrown out live sparks in a way that might easily communicate fire. To this evidence the defendants objected, because it did not appear that, upon the occasions referred to, either of the engines were run that were used upon the night of the fire; but the court admitted it, the defendants excepting. One witness, in testifying upon this point, spoke of one occasion when one of the engines threw out sparks and coals of fire, as though there must have been a large hole in the bonnet over the smoke stack; but it appeared that this engine was not either of those used upon the night of the fire. No particular objection was taken to this statement of the witness in regard to the hole in the bonnet, and the effects produced by it. The court instructed the jury that they should inquire whether the engines used upon the night of the fire were in good repair, with bonnets whole and without defect, as the evidence tended to show they were; and if so, whether it was more probable than otherwise that the fire was communicated to the plaintiff's barn from the defendants' engines.

The court instructed the jury, that if they found that the fire was communicated from the engines upon the

road, by which the plaintiff's barn, &c., was consumed, the defendants would be liable in this action; to which last instructions the defendants excepted.

DECLARATION. "In·a plea of trespass on the case, for that whereas the said corporation heretofore, to wit, on the third day of September, 1858, at said Troy, was possessed of a certain railroad, passing through the said town of Troy, and of certain locomotive steam engines used by them for the purpose of drawing their cars over the said road; and whereas the plaintiff was then and there the owner of a certain barn, situated near the said railroad, and of great value, to wit, of the value of six hundred dollars, and three sheds, standing near said barn, being of great value, to wit, of the value of six hundred dollars; and of certain hay, straw, grain and fodder in said barn, of great value, to wit, of the value of five hundred dollars; and of certain neat cattle, horses and swine in said barn, of great value, to wit, of the value of five hundred dollars; and of certain farming utensils, carts and wagons stored in said barn, and of great value, to wit, the value of two hundred dollars; and whereas the said corporation was then and there bound by law so to use, manage and run said steam engines that no damage should be done to the buildings or other property of any person situated near the line of their said road; yet the said corporation heretofore, to wit, on the said third day of September, to wit, at said Troy, did so negligently use, manage and run their said engines, that by reason of such negligence the plaintiff's said barn and sheds were, by means of fire from one of said engines, set on fire, and the said barn and sheds, together with all the said property then and there being in the same, were entirely consumed and destroyed by fire, to the damage of the said plaintiff, as he says, the sum of five thousand dollars."

*Wheeler & Faulkner,* for the defendants.

*E. L. Cushing,* for the plaintiff.

FOWLER, J.   The evidence as to what were the condition and repair of engines, other than those in use upon the defendants' road on the night of the fire, and from which, if from any, the fire must necessarily have been communicated to the plaintiff's buildings, was incompetent and inadmissible.   That sparks or even coals might have been emitted at other times from other engines employed upon the road, had no legal tendency to prove that the engines employed upon that particular occasion, emitted either sparks or coals.   To have rendered the evidence competent, it should have been confined to the same engines, operated in the same manner and in the same state of repair, or to other engines, conceded to have been of the same construction, to have been used in the same manner and in the same state of repair; which was not the fact with the engines as to which testimony was introduced against the defendants' objection. *Hooksett* v. *Concord Railroad,* Merrimack, July term, 1860.

Nor had the cross-examination of G. W. Perry rendered the testimony objected to competent.   That cross-examination was upon immaterial matters, so far as it did not relate to the engines from which the fire was alleged to have been communicated to the plaintiff's buildings, was introduced by the plaintiff himself, and he was not at liberty to contradict it. *Seavey* v. *Dearborn,* 19 N. H. 351; *Hersom* v. *Henderson,* 23 N. H. 498.

It might be suggested, that, under the instructions of the court, the testimony objected to, though incompetent, was also immaterial, and therefore its improper admission furnishes no ground for setting aside the verdict; but we think it was well calculated to prejudice the minds of the jury against the defendants. *Winkley* v. *Foye,* 28 N. H.

518; S. C. 33 N. H. 171; *Cook* v. *Brown*, 34 N. H. 460; *Center* v. *Center*, 38 N. H. 318.

Whether the instructions, in regard to the maintenance of the action without proof of negligence, were correct, it is not now necessary to determine. It having been decided in *Hooksett* v. *Concord Railroad*, 38 N. H. 242, that in the case of a fire resulting from the engines of the corporation, a railroad is liable for damages without regard to the question of negligence, the only point to be decided would seem to be, whether the immaterial allegation of negligence is so descriptive of the material and legally essential averment that the fire was communicated to the plaintiff's buildings from the defendants' engines, that it can not be rejected. As a general rule, no allegation which is descriptive of the identity of that which is legally essential to the claim or charge, can ever be rejected; and, if an immaterial allegation limit and confine that which is material, the latter can never be available to any greater extent; for such an averment is always descriptive. 3 Stark. Ev. 1539–1550. *State* v. *Copp*, 15 N. H. 212. In other words, the substance of the rule is, that, unless you may not only reject the immaterial allegation, but every allegation or averment which it goes to identify by description or to limit or define, an immaterial averment can not be rejected as surplusage; so that, if any material averment is thus described, limited or defined, the indictment, declaration or other pleading, must fall without proof of the immaterial averment.

In the present case, the duty of the defendants so to run their engines as not to burn the property of persons situated near the line of their road, is alleged generally, but the *gravamen* of the complaint seems to be, that they so negligently run them that the plaintiff's buildings, by reason of such negligence, were, by means of fire from one of said engines, set on fire and consumed. We think it may well be doubted, whether this allegation of negli-

gence is not so descriptive of the identity of the material averment—whether it does not so limit and define the allegation of the communication of fire from the defendants' engines to the plaintiff's buildings; that, although unnecessary to have been made, it must be proved in order to sustain the declaration. But, as this question may be entirely avoided upon a new trial, if upon careful examination it shall be deemed advisable, by striking out the allegation of negligence wherever it occurs, it is unnecessary to pursue the subject farther.

For the admission of incompetent evidence, the verdict must be set aside and a new trial granted.

·                    *Verdict set aside.*